UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

RUDDY MEOLY,

              Defendant.

------------------------------------X

09 Cr. 385-03 (RWS)

<u>SENTENCING OPINION</u>

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/25/10

**Sweet, D.J.**

      On March 23, 2010, Ruddy Meoly ("Meoly" or "Defendant") pleaded guilty to one count of conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846. For the reasons set forth below, Meoly will be sentenced to time-served and three years' supervised release. Meoly will also be required to pay a special assessment of $100 and forfeit the proceeds of his offense.

**<u>Prior Proceedings</u>**

      On April 16, 2009, Indictment 09 CR 385-03 (RWS) was filed in the Southern District of New York. Count 1 charges that in March 2009, in the Southern District of New York and

elsewhere, Meoly and others conspired to distribute and possess with intent to distribute 500 grams and more of cocaine, in violation of 21 U.S.C. § 846. Count 2 charges that on March 18, 2009, in the Southern District of New York and elsewhere, Meoly and others distributed and possessed with intent to distribute 500 grams and more of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(B).

On March 23, 2010, Meoly appeared before the Honorable Gabriel W. Gorenstein in the Southern District of New York and allocuted to Count 1 pursuant to a plea agreement.

On August 31, 2010 the Court received a sentencing memorandum from Defendant's counsel, Mr. Schoenbach, requesting that the Court be lenient when imposing a sentence in light of Meoly's family background and efforts to improve himself, to raise a family and to have a normal life. Schoenbach's letter described Meoly's minimal role in the crime and his Meoly's brother's involvement in the offense.

Meoly's sentencing is currently scheduled for October 26, 2010.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

   (A) the applicable category of offense committed by the applicable category of defendant as

3

>                set forth in the guidelines . . .;
>
> (5) any pertinent policy statement . . . [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Meoly's personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

Information contained in this section is based on a criminal complaint prepared by a Special Agent with the Drug Enforcement Agency ("DEA").

At the direction of law enforcement agents, on January 12, 2009, a cooperating witness (the "CW") met with Jean Carlos Rosado-Cintron ("Rosado-Cintron"). During that meeting, Rosado-Cintron told the CW that he had multiple sources of cocaine.

Discussions between the CW and Rosado-Cintron regarding narcotics continued from January 2009 through March 18, 2009.

On March 18, 2009, Rosado-Cintron made one or more telephone calls to the CW, which call or calls were consensually recorded, stating, in substance, that he had a source of supply which could provide 5 kilograms of cocaine. Rosado-Cintron and the CW arranged to meet in the vicinity of 1790 Amsterdam Avenue, New York, New York (the "Meet Location"), where a business called the "50/50 Barbershop" (the "Barbershop") is located, to consummate the transaction.

On March 18, 2009, at approximately 4:45 p.m., DEA agents set up surveillance of the Meet Location. Agents saw the CW, who was equipped with a recording device, approach Rosado-Cintron, who was outside of the Barbershop at the Meet Location, at approximately 5:00 or 5:15 p.m. The CW spoke with Rosado-Cintron and was introduced to Jose Aneury Then-Prado ("Then-Prado"), who was employed at the Barbershop. Rosado-Cintron, Then-Prado, and the CW spoke for about 15 minutes. Then-Prado told Rosado-Cintron, in substance, that "it" would be there in 15 minutes, which the CW overheard. Rosado-Cintron then repeated Then-Prado's statement to the CW. The CW then left the Meet Location and reported to agents that the product would be at the Meet Location in approximately 15 minutes.

On March 18, 2009, at approximately 5:30 p.m., the CW entered the vehicle from which agents were conducting surveillance. The CW then received a telephone call or calls from Rosado-Cintron, in which Rosado-Cintron stated that Then-Prado's supplier would not be able to provide the product until approximately 7:00 p.m., and that the location should be moved to Rosado-Cintron's residence, which was in the vicinity of 123 West 197th Street, the Bronx, New York. The CW told Rosado-Cintron that he did not want to move the location because the

buyer did not want to move the buyer's money.  Rosado-Cintron then told the CW that he had another source of supply in the vicinity of Kingsbridge and University, who had access to kilogram amounts of cocaine, and that the transaction could occur at that location.  At law enforcement direction, the CW told Rosado-Cintron that he did not want to move to another location, but would instead wait for Then-Prado's supplier.

On March 18, 2009, at approximately 6:02 p.m., Rosado-Cintron placed another telephone call to the CW, which was recorded.  In that telephone call, Rosado-Cintron stated Then-Prado was speaking to a source in an SUV at that moment about getting "it."  At approximately the same time, another law enforcement officer who was continuing to observe the Meet Location (the "Task Force Officer") observed Then-Prado standing near the front passenger window of a silver SUV, speaking with an unknown person.  A short time later, Rosado-Cintron called the CW back, and stated that the person in the SUV had "four," and he is going to get it "now."  At approximately the same time, the Task Force Officer observed the SUV depart the Meet Location.

On March 18, 2009, at approximately 6:10 p.m., the Task Force Officer observed the SUV return to the Meet Location, and observed Meoly exit the SUV from the passenger side with a black bag in his hand, and enter the Barbershop. The driver of the SUV also exited the SUV and entered the Barbershop.

On March 18, 2009, at approximately 6:20 p.m., Rosado-Cintron called the CW and told him that they were ready. At law enforcement direction, the CW entered the Barbershop at approximately 6:25 p.m. At approximately 6:30 p.m., the CW called the agents and stated that there were "four" in a black bag, and that the bag was in a back room at the Barbershop. The CW also told agents that Rosado-Cintron and Then-Prado were present when the black bag was opened and when the CW cut into each kilogram of cocaine.

On March 18, 2009, at approximately 6:30 p.m., agents approached Rosado-Cintron, Then-Prado, and Meoly and arrested them. The four bricks in the black bag were each field tested for the presence of cocaine. Each brick tested positive for the presence of cocaine.

**The Relevant Statutory Provisions**

Pursuant to 21 U.S.C. § 841(b)(1)(B), the mandatory minimum term of imprisonment is five years and the maximum term of imprisonment is 40 years. Pursuant to the provisions of 18 U.S.C. § 3553(f), Defendant meets the criteria set for imposition of a sentence in accordance with the Guidelines, without regard to any statutory minimum sentence.

If a sentence of imprisonment is imposed, a term of supervised release of at least four years is required, pursuant to 21 U.S.C. § 841(b)(1)(B).

Defendant is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to 18 U.S.C. § 3561(a)(2) and 21 U.S.C. § 841(b)(1)(B).

The maximum fine that may be imposed is $2 million, pursuant to 21 U.S.C. § 841(b)(1)(B). A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2009 edition of the <u>United States Sentencing Commission Guidelines Manual</u> has been used in this case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

The guideline for the violation of 21 U.S.C. § 841(b)(1)(B) is found in § 2D1.1. Defendant's criminal activity involved at least 3.5 kilograms but less than 5 kilograms of cocaine. The base offense level for the instant offense is therefore 30, pursuant to the Drug Quantity Table under § 2D1.1(c)(5).

Defendant meets the criteria set forth in subdivisions (1)-(5) of § 5C1.2. Accordingly, a two-level decrease in the offense level is warranted pursuant to § 2D1.1(b)(11).

Based on his plea allocution, Defendant has shown recognition of his responsibility for the offense. Pursuant to § 3E1.1(a), the offense is reduced two levels. Furthermore, an additional one-level reduction is warranted, pursuant to § 3E1.1(b), because Defendant gave timely notice of his

intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

Accordingly, the applicable offense level is 25.

According to the FBI and the New York State Division of Criminal Justice Services, Bureau of Identification, Defendant has no prior criminal convictions. Therefore, Defendant has zero criminal history points and a Criminal History Category of I, pursuant to the table at Chapter 5, Part A, of the Guidelines.

Based on a total offense level of 25 and a Criminal History Category of I, the Guidelines range for imprisonment is 57 to 71 months.

The Guidelines range for a term of supervised release is four to five years, pursuant to § 5D1.2(c). Application Note #2 of § 5D1.1 provides that a defendant who qualifies under § 5C1.2 is not subject to any statutory minimum sentence of supervised release. The Guideline range for a term of supervised release is therefore three to five years, pursuant to

§ 5D1.2(a)(1).

Defendant is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to § 5B1.1(b)(2).

The fine range for the instant offense is $10,000 to $2 million, pursuant to § 5E1.2(c)(3)(A) and (c)(4). Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,157.88 to be used for imprisonment, a monthly cost of $311.94 for supervision, and a monthly cost of $1990.13 for community confinement.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's

decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a departure from the Guidelines sentence is warranted in the instant case.

As noted above, under 18 U.S.C. § 3553(a)(1), the Court is instructed to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." Furthermore, under 18 U.S.C. § 3553(a)(2)(A), the Court's sentence shall "reflect the seriousness of the offense" committed by the defendant. According to defense counsel's August 31, 2010 letter, Meoly, who has no prior criminal convictions, was a "one-day delivery man" who accompanied his brother in a drug delivery. Def. Sent. Mem. at 2, 5. The Court has no evidence that Meoly's role in the drug offense was anything but that. Meoly's brother is now a fugitive. Def. Sent. Mem. at 2. In light of Meoly's lack of a criminal history and minor role in the offense, the Court finds that a downward

departure from the Guidelines is necessary to ensure that the sentence given is "'sufficient, but not greater than necessary' to accomplish the goals of sentencing." Kimbrough, 552 U.S. at 102 (quoting 18 U.S.C. § 3553(a)).

**The Sentence**

For the instant offense, Meoly will be sentenced to time-served and 3 years' supervised release.

Meoly is directed to report to the nearest United States Probation Office within seventy-two hours of release to commence his term of supervised release. It is recommended that Meoly be supervised by the district of his residence.

As mandatory conditions of his supervised release, Meoly shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; and (3) not possess a firearm or destructive device. The mandatory drug testing condition is suspended based on the Court's determination that Defendant poses a low risk of future substance abuse.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1) Defendant shall obey the immigration laws and comply with the directives of immigration authorities.

(2) Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.

A special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

As a result of committing the controlled substance offense alleged in Count 1 of the Indictment, Meoly, Then-Prado and Rosado-Cintron shall forfeit to the United States, pursuant to 21 U.S.C. § 853, any and all property constituting or derived from any proceeds they obtained directly or indirectly as a result of the narcotics violation and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the narcotics violation alleged in Count 1 of the Indictment.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for October 26, 2010.

It is so ordered.

New York, NY
October 25, 2010

ROBERT W. SWEET
U.S.D.J.